**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NEAL M. DOUGLAS, et al.,<br><br>    Plaintiffs,<br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant,<br><br>REESE M. JONES, an individual,<br><br>    Plaintiff,<br>v.<br><br>DEUTSCHE BANK, AG a corporation, et al.<br>    Defendants | NO. C 03-04518 JW<br>NO. C 04-05357 JW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART UNITED STATES' MOTION FOR STAY; VACATING ORDER TO CONSOLIDATE** |

## I. INTRODUCTION

Neal and Christine Douglas ("Douglases") brought an action against the United States of America ("Government") seeking a refund of more than $14 million of individual income taxes paid for the 2000 tax year ("Douglas"). The Government counterclaimed alleging, pursuant to 26 U.S.C. §6662(h), that the Douglases owe an accuracy-related penalty in the amount of over $5.7 million. In a separate case, Plaintiff Reese M. Jones ("Jones") brought an action against Deutsche Bank, AG and Deutsche Bank Securities ("Deutsche Bank"); Chenery Associates, Chenery Associates, Inc., Chenery Management, Inc., Chenery Services, Inc. and Chenery Capital, Inc. (collectively "Chenery"), and numerous other individuals and corporations (all defendants in the Jones case collectively "Deutsche Bank et al.") for violation of the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), 18 U.S.C. §1962, or in the alternative, for violation of the 1934 Securities Exchange Act, Rule 10b-5 ("Jones").  Both cases involve a tax shelter, Custom Adjustable Rate Debt Structure ("CARDS").  Presently before the Court is the Government's Motion for Stay of Depositions, Trial and Other Activity (Except Document Discovery) Pending Completion of Stein Criminal Tax Shelter Case in S.D.N.Y.  ("Motion to Stay") for both Douglas and Jones.  This Court finds it appropriate, pursuant to Civil L.R. 7-1(b), to take the Government's motion under submission, without oral argument, for a decision based upon the parties' papers.  For the reasons set forth below, the Court GRANTS the Government's Motion to Stay as to Douglas and DENIES the Government's Motion to Stay as to Jones.

## II.  BACKGROUND

**A.    The Douglas Case**

Neal Douglas ("Douglas") engaged in a CARDS transaction in December 2000 when he purchased from Marylebone Financial Trading, LLC ("Marylebone") a promissory note of EURO ("E") 12,447,520 made by Deutsche Bank.  The promissory note was originally acquired by Marylebone using money from a loan of E83,223,102 they received from Deutsche Bank.  (First Am. Compl. ("Douglas FAC") ¶¶ 14-16, Douglas Docket Item No.11.)  As consideration, Douglas assumed joint liability with Marylebone for payment of the entire loan Deutsche Bank gave Marylebone.  (Douglas FAC ¶ 18.)  The Douglases immediately sold the promissory note and claimed a cost basis of 100 percent of Marylebone's original loan instead of the 15 percent that the note was worth for their individual income tax return for tax year 2000, resulting in a $68,251,902 short-term capital loss deduction.  (Douglas FAC ¶¶ 15-16 & 22; Joint Case Management Statement ("CMS") at 2, Douglas Docket Item No. 20.)

On January 14, 2002, the Internal Revenue Service ("IRS") released Announcement 2002-2 (2002-2 I.R.B. 304) titled "Disclosure Initiative for Certain Transactions Resulting in Waiver of Certain Penalties Under Section 6662 of the Internal Revenue Code ("Disclosure Initiative")."  The Disclosure Initiative encouraged tax payers to disclose their tax treatment of tax shelters for which,

2

1  if filed prior to April 2003, applicable accuracy-related penalties could be waived. (Decl. of Neal
2  Douglas in Supp. of Pls.' Mot. for Partial Summ. J. ("Douglas Decl.") ¶ 4 and attached as Ex. A,
3  Douglas Docket Item No. 61.) On February 15, 2003, the Douglases filed an amended tax return
4  reflecting an amended capital gain for the tax year 2000 and submitted a payment of $14, 454, 664
5  on the adjusted cost basis of the promissory note. Subsequently, the Douglases filed a second
6  amended tax return on March 26, 2003 asserting the tax basis reported in the original tax return was
7  correct and requested a refund. (Douglas FAC ¶¶ 23-24.)

8  The Government counterclaims against the Douglases alleging they owe penalties of
9  $5,727,474 (plus interest) under 26 U.S.C. § 6662(h), or in the alternative, $2,863,737 (plus interest)
10 under 26 U.S.C. § 6662(a). (First Am. Answer and Countercl. by United States of America
11 ("Douglas FAA") ¶¶ 28-30, Douglas Docket Item No. 19.) The Government argues that the
12 Disclosure Initiative waiver does not apply in cases of fraud. (Decl. of Christopher Kliefoth in
13 Supp. of Pls. Neal and Christine Douglas's Opp. to United States' Mot. for Stay of Deps., Trial and
14 Other Activity (Except Doc. Disc.) Pending Completion of Stein Criminal Tax Shelter Case in
15 S.D.N.Y. ("Kliefoth Decl.") ¶ 26, Douglas Docket Item No. 60; Disclosure Initiative attached to
16 Douglas Decl. as Ex. A.)

17 **B.    The Jones Case**

18 Jones brought suit against Deutsche Bank, et al., for their role in promoting numerous tax
19 strategies, including CARDS, and inducing Jones to utilize those strategies under the premise that
20 they were lawful. (First Am. Compl. for Violation of RICO, or in the Alternative, Securities Fraud
21 ("Jones FAC") ¶¶ 22, 29-30, Jones Docket Item No. 6.) Allegedly at the advice of Chenery and
22 other defendants, Jones filed a Disclosure Initiative for amnesty for tax years 2000 and 2001 causing
23 Jones to be audited for those years by the IRS. He also filed a disclosure amnesty with the Franchise
24 Tax Board of the State of California. According to Jones, Deutsche Bank, et al.'s activities resulted
25 in his owing back state taxes for 2000, 2001 and 2002 and his having to pay more than $2.4 million
26 in taxes and interest. (Jones FAC ¶ 53.) Jones also owes back federal taxes in the amount of

3

1  $5,253,495.46 (amount is disputed) which the IRS has demanded that Jones pay in one lump sum
2  and filed liens against his property.  (Decl. of William M. Lukens in Supp. of Mem. in Opp. to
3  United States' Mot. for Stay of Deps., Trial and Other Activity ("Lukens Decl.") ¶ 4, Jones Docket
4  Item No. 193; Joint Status Report ("Status Report") at 4, Jones Docket Item No. 204.)  The
5  Government also maintains that because the Jones' proposed $105,000 installment plan is
6  insufficient, the Government intends to continue collection proceedings.  (Status Report at 3.)

**C.     The Stein Case**

The Government has been engaged in criminal investigation of CARDS focusing on whether the 30 year loans are bona fide or sham loans, the loan documentation is fraudulent, the transactions have no legitimate business purposes and whether the involvements of foreign third parties were legitimate arms length participants in the transactions.  (Decl. of Shirah Neiman ("Neiman Decl.") ¶ 3, Douglas Docket Item No. 52.)  The investigation has revealed that roughly 62 CARDS transactions were conducted between 1999 and 2002, generating $1.8 billion in tax losses.  Deutsche Bank has been implicated in 23 transactions and Bayerische Hypo-und Vereinsbank ("HVB") in 29. (Neiman Decl. ¶ 2.)

The case of United States v. Stein, et al., Indictment No. S1 05 Cr. 888 (LAK) (S.D.N.Y.). ("Stein"), focuses on four tax shelters known as FLIP, OPIS, BLIPS and SOS and its variants and encompasses the conduct of a number of defendants including Raymond J. Ruble ("Ruble") of the law firm Brown & Wood and its successor Sidley Austin Brown & Wood (collectively "SABW") and Deutsche Bank, who were also involved in the Douglas and Jones CARDS transactions. (Neiman Decl. ¶ 4 and attached as Ex. A.)  The Stein case is scheduled to go to trial on September 11, 2006 and projected to end by the end of January 2007.  (Neiman Decl. ¶¶ 4, 14.)

HVB has entered into a Deferred Prosecution Agreement, United States v. HVB, Information No. 06 Cr. 162 (AKH)(S.D.N.Y.) (Deferred Prosecution Agreement, attached to Neiman Decl. as Ex. B.), in which it has admitted its illegal participation in several tax shelters including CARDS. Dominick DeGiorgio ("DeGiorgio"), an HVB official, has pled guilty and admitted his role in

4

leading HVB's participation in fraudulent tax shelters.  <u>United States v. DeGiorgio</u>, Information No. 05 Cr. 853 (BSJ) (S.D.N.Y.).  (Attached to Neiman Decl. as Ex. C.)

Additional individuals and entities are under investigation in the <u>Stein</u> case for their involvement in CARDS  that were also involved in <u>Douglas</u> and <u>Jones</u>, such as Deutsche Bank and its current and former employees.  (Neiman Decl. ¶ 5.)

### III.  STANDARDS

The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings.  <u>Federal Sav. & Loan Ins. Corp. v. Molinaro</u>, 889 F.2d 899, 902 (9th Cir. 1989); <u>Sec. & Exch. Comm'n v. Dresser Indus.</u>, 628 F.2d 1368, 1375 (D.C. Cir. 1980), cert. denied, 449 U.S. 993 (1980).  "In the absence of substantial prejudice to the rights of the parties involved, [simultaneous] parallel [civil and criminal] proceedings are unobjectionable under our jurisprudence."  <u>Dresser</u>, 628 F.2d at 1374.  "Nevertheless, a court may decide in its discretion to stay such action.'"  <u>Id.</u> at 1375 (quoting <u>United States v. Kordel</u>, 397 U.S. 1, 12  n.27).

The decision to stay civil proceedings in the face of a parallel criminal proceeding should be made "in light of the particular circumstances and competing interests involved in the case."  <u>Molinaro</u>, 889 F.2d at 902.  This means the decision maker should consider "the extent to which [a party's] fifth amendment right is implicated," <u>id.</u>, and whether denial of the stay would "extend criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure 16(b) ("Rule 16(b)")," potentially prejudicing one party's case by exposing their theory in advance.  <u>Dresser</u>, 628 F.2d at 1376.  "Other factors a court should consider will vary according to the case itself, but generally will include: (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation."  <u>Molinaro</u>, 889 F.2d at 903.  See also <u>Keating v. Office of</u>

5

Thrift Supervision, 45 F.3d 322, 324-325 (9th Cir. 1995) (same).

## IV.  DISCUSSION

In situations involving a parallel criminal proceeding the court has discretion to stay a civil proceeding if it is in the "interest of justice."  Kordel 397 U.S. at 12 n.27.  Thus, evaluation of the Government's Motion to Stay, involves balancing the interests of 1) plaintiffs, 2) defendants, 3) judicial efficiency, 4) nonparties and 5) the public.  Molinaro, 889 F.2d at 903.

**A.  Plaintiffs' Interests**

    1.  The Douglas Case

In their original opposition to the Government's Motion to Stay, the Douglases objected only to staying discovery and resolution of the counterclaims the Government filed against them for civil penalties and interest under 26 USC §6662(h).  Since then, the Douglases have stipulated to a stay with carved-out exceptions. (Stipulated Request for Order of Stay of Depositions, Trial and Other Activity (Except Document Discovery and Certain Deposition Discovery), Request for Ruling on Possible Additional Carve-Out During Pendency of Stay ("Stipulation"), Douglas Docket Item No. 69.)  The remaining objection is regarding discovery on the issue of whether the Douglases' filed a qualified amended return. (Stipulation at 7.)

The Douglases' argument that granting the stay will cause prejudice measured in attorney bills and the amount of time litigating the issue is moot since a stay would cease most activity until the conclusion of the Stein trial. (Pls Neal and Christine Douglas's Opp. to United States' Mot. for Stay of Deps., Trial and Other Activity (Except Doc. Disc.) Pending Completion of Stein Criminal Tax Shelter Case in S.D.N.Y. ("Douglas Opp.") at 15, Douglas Docket Item No. 59.)  Additionally, based on the nature of Douglas and its links to the Stein case, staying the proceeding will potentially allow both sides to make use of materials in the Stein case to narrow the issues, saving in attorney time and costs.  Since the Government has already agreed to freeze collection of the penalty and the results of the Stein case may in fact benefit the Douglases, the Douglases do not have a strong interest in proceeding with their case.

6

### 2. The Jones Case

For Jones, however, there is no freeze against collecting his back taxes amounting to over $5 million and the IRS has issued liens on Jones' property. Such actions are negatively impacting Jones' credit, affecting his ongoing business ventures and his ability to pay the taxes owed. (Lukens Decl. ¶ 4; Status Report at 4.) Additionally, the IRS refuses to accept Jones' proposed $105,000 installment plan. Id. Thus, Jones has a substantial interest in proceeding in a timely fashion because a judgment in his favor would assist him in paying the back taxes Deutsche Bank, et al. are allegedly responsible for.[1] Furthermore, Jones has already made payments toward his back taxes amounting to over $400,000 on the proposed installment plan and states that he will continue to do so until all taxes are paid. (Lukens Decl ¶ 4.) Since Jones has shown he has been attempting to cooperate with the IRS and making payments, the Government's concern in protecting itself "by pursuing collection of these agreed-upon liabilities, including filing a notice of federal tax lien" is unfounded. Based on the substantial interest Jones has in pursuing these proceedings, the first factor is heavily in his favor.

**B.    The Defendant's Interest**

### 1. The Douglas Case

In order for the Government to develop a complete defense against the Douglases' suit and their penalty counterclaim, the Government needs to demonstrate that the Douglases' tax return was fraudulently filed and therefore is not a qualified amended return. (Disclosure Initiative, attached to Douglas Decl. as Ex. A.) To do so, the Government claims they would need to depose several individuals including Ruble, other attorneys at SABW, former and current Deutsche Bank employees and DeGiorgio. All of those individuals either will or potentially could be called to testify in the Stein criminal trial or are currently under criminal investigation. Although the

---

[1] The Government alleges that since Jones has a judgment against Stars Holding Co. for $22,934,520.84 that he is attempting to collect on, he has enough money to pay the IRS. (United States' Reply Mem. in Supp. of Mot. for Stay Pending Related Criminal Trial ("US Reply") at 11 n.8, Douglas Docket Item No. 65.) However, the Government submits no affidavits or declarations in support of this statement.

Government argues they require information in the Stein case to prepare effective examinations, this is unpersuasive. Just because the information gathered in Stein would benefit the Government does not automatically entitle it, as any other civil litigant, to that information. See Belford Strategies Inv. Fund, LLC. v. United States, 2005 WL 3278597, at *2-3 (N.D. Cal. Nov. 7, 2005).

Yet, allowing depositions of these individuals to move forward does cause another source of concern that some witnesses under investigation will potentially invoke their Fifth Amendment right, frustrating the discovery process. For example, the Government might want to depose defendants indicted in the Stein case such as Ruble, who are likely to invoke their Fifth Amendment right considering the impending criminal trial. This would directly impact the Government's ability to prove their counterclaim and defend themselves against the Douglases' suit.

Additionally, allowing the depositions could give an unfair preview of the Government's evidence, theories and strategies, prejudicing the Stein case. (Neiman Decl. ¶ 6.) For example, deposing an important cooperating Government witness, could give the Stein defendants an unfair glimpse of what the Government's evidence is, allowing them to tailor their strategy, theory of the case, and testimony accordingly. (Neiman Decl. ¶ 7.) The criminal rules of civil procedure have stricter guidelines than those for civil cases and criminal defendants should not be allowed to use a civil case to gain pertinent premature access to evidence and information. See Dresser, 628 F.2d at 1376. This is especially applicable in this case, given the allegations of the close connections between the Douglases and the defendants in the Stein case.[2] Thus, this factor favors staying Douglas.

2.  The Jones Case

Although the Defendants in Jones could have an interest in staying the case due to the criminal investigations being conducted against them and for the sake of efficiency, Deutsche Bank

---

[2] The Douglas case indirectly involves one promoter and other taxpayers who engaged in CARDS to shelter their income. There appears to be a coalition of certain individuals involved in marketing, structuring, and implementing CARDS that have helped finance the Douglases' case by contributing to a CARDS litigation fund. (Decl. of William M. Lukens in Supp. of Reply on Mot. to Consolidate Actions and attachments Ex. A-E, Docket Item No. 40; See Neiman Decl. ¶ 11.)

et al. did not file any papers indicating their position. Therefore, this factor neither supports nor weighs against the stay.

**C.  Judicial Efficiency**

The third factor requires the Court to consider the impact a stay would have on judicial efficiency. Because facts disclosed during the Stein trial may shed light on Douglas and Jones, it is in the interest of judicial efficiency to stay both cases. Douglas, Jones, and Stein involve similar players and overlapping transactions. Testimony presented in Stein will potentially narrow the issues lessening the likelihood of disputes. (Neiman Decl. ¶ 13.) Since "the criminal case may later streamline discovery in the civil case," Bridgeport Harbour Place I, LLC, 269 F. Supp. 2d. 6, 9 (D. Conn. 2002), this factor weighs in favor of a stay.

**D.  Nonparty Interests**

1.  The Douglas Case

Because the parties in Stein overlap with the potential third party deponents in Douglas, it is also in their interest to stay this action. The grand jury investigation of CARDS is ongoing and Deutsche Bank and its current and former employees are still under investigation for their participation in numerous tax shelters. If they were subpoenaed for deposition, they could invoke their Fifth Amendment right against self-incrimination resulting in additional burdens on the witnesses since it may require further appearances plus the cost of counsel. Moreover, the results of the Stein trial could narrow down the list of deponents, saving some witnesses the time and cost of appearing at all. Therefore, this factor also weighs in favor of staying Douglas.

2.  The Jones Case

The reasoning above in regards to the third party interests in Douglas is also applicable to Jones since the parties in Stein also overlap with the third parties in Jones. Furthermore, the Government is a third party to the Jones case and the concern in exposing the Government's Stein case is equally applicable to Jones. As such, this factor favors staying Jones.

9

**E.     Public Interest**

The public has an interest in "ensuring that the criminal process is not subverted" by ongoing civil cases. Bridgeport Harbour, 269 F. Supp. 2d at 10 (quoting Rosenthal v. Giuliani, 2001 WL 121944 at *2 (S.D.N.Y. Feb. 9, 2001)). Although there is some interest in a speedy resolution of a plaintiff's claim, it "pales in comparison to the public interest as a whole," Ashworth v. Albers Medical, Inc., 229 F.R.D. 527, 532, (S.D. W. Va. 2005) in unraveling a criminal scheme that potentially has defrauded the Government of $1.8 billion in taxes. Accordingly, this factor is in favor of a stay.

**F.     Balancing of Interests**

1.     The Douglas Case

Because the Douglases do not have a strong interest in proceeding with their case while the Government does have a strong interest in a stay, this Court GRANTS the Government's Motion for Stay of deposition discovery on the question of whether the Douglases filed a qualified amended return. In light of the stay, the Government shall file and serve a statement on January 31, 2007 updating the Court of the status of the Stein case. If the Stein case is resolved prior to January 31, 2007, the Government shall file and serve a statement so notifying the Court and the Douglases.

2.     The Jones Case

Although three of the five factors weigh in favor of the Government's motion, the heavy burden on Jones that would result is too substantial to warrant a stay at this time. Unlike the Douglases, the Government is still attempting to collect taxes from Jones and has filed liens against his property. Additionally, since the Government is not a party to this suit, they have a lesser interest in staying Jones than Douglas. Therefore, the Court DENIES the Government's Motion to Stay Jones. However, because the Court recognizes the Government's interest, the Government may address their concerns on a deposition-by-deposition basis with Magistrate Judge Seeborg. Additionally, the Government may file for a protective order to protect any interests they may have in specific depositions.

10

## V.  CONCLUSION

For the reasons stated above, the Government's Motion is GRANTED in PART and DENIED in PART.  Since <u>Jones</u> is proceeding while <u>Douglas</u> is being stayed, the Court hereby VACATES its August 12, 2005 Order Granting in Part and Denying in Part Plaintiff's Motion to Consolidate (Docket Item No. 132 in <u>Jones</u>; Docket Item No. 46 in <u>Douglas</u>).

Dated: July ___, 2006
03cv4518stay

JAMES WARE
United States District Judge

11

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**
Christopher Kliefoth ckliefoth@mwe.com
Cynthia Lewis Stier cynthia.stier@usdoj.gov
Daniel E. Alberti dalberti@mwe.com
Emily J. Kingston Emily.Kingston@usdoj.gov
Goud Maragani Goud.P.Maragani@usdoj.gov
Jay R. Weill jay.weill@usdoj.gov
Joseph A Sergi joseph.a.sergi@usdoj.gov
Marika Lancaster Marika.E.Lancaster@usdoj.gov
Mark Hunter Churchill mchurchill@mwe.com
William Carl Hankla w.carl.hankla@usdoj.gov
William M. Lukens wlukens@lukenslaw.com


**Dated:**                                                                **Richard W. Wieking, Clerk**


                                                                          **By:**_____
                                                                               **Snooki Puli**
                                                                               **Courtroom Deputy**

**United States District Court**
For the Northern District of California